United States District Court
Southern District of Texas
**ENTERED**
September 30, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LESLIE BALES, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-04958 |
| | § | |
| HOUSTON INDEPENDENT SCHOOL DISTRICT, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

# ORDER

Before the Court are Defendants Houston Independent School District ("HISD") and Rita Graves' ("Graves") (collectively, "Defendants") Motion to Dismiss (Doc. #13), Plaintiffs Leslie Bales ("Ms. Bales") and Bryan Bales' ("Mr. Bales") (collectively, "Plaintiffs") Response (Doc. #15), and Defendants' Reply (Doc. #16). Having considered the parties' arguments and the applicable legal authority, the Court grants the Motion to Dismiss in part.

## I. Background

### a. Factual Background

Ms. Bales, a Black woman, and Mr. Bales, a White man, are a married couple with three children. Doc. #1 ¶¶ 8, 9, 11. Their two adult daughters, Maegan Ann Bales-Cortez ("Maegan") and Zoe Katherine Bales ("Zoe"), are graduates of Lamar High School ("Lamar"), located in HISD. *Id.* ¶ 11. Plaintiffs' son, Ethan Atticus Bales ("Ethan"), attended Lamar during the events giving rise to this case, but has since graduated. *Id.* Graves is the Principal at Lamar. *Id.* ¶ 3.

On March 1, 2023, Maegan and Zoe drove to Lamar to check Ethan out of school and take him to an off-campus lunch. *Id.* ¶ 12. After parking the car, Maegan began walking toward the

school's Welcome Center, intending to sign Ethan out at the reception desk. *Id.* ¶¶ 13–14. Ethan was already standing outside the entrance of the school. *Id.* ¶ 14. As Maegan walked to the front of the school, she discovered she forgot her driver's license. *Id.* ¶ 15. Realizing she could not check Ethan out of school without a license, Maegan instead went back to her car to retrieve the lunch she had picked up so that she could give it to Ethan. *Id.* ¶ 16. After she delivered the lunch to Ethan, Maegan was confronted by HISD police officer Craig Davis ("Davis") and HISD employee Suzanne Acord ("Acord"), who reprimanded her about her attempt to deliver lunch outside proper campus procedure. *Id.* ¶¶ 18, 19, 21. Plaintiffs allege that Davis and Acord were hostile toward Maegan during the exchange. *Id.* ¶¶ 20–21.

After Maegan informed her parents about the incident at Lamar, Plaintiffs drove to the school the same day to voice their concern about the treatment of their daughter by HISD employees. *Id.* ¶ 24. Plaintiffs entered the Welcome Center, and HISD employee Antrice Axel ("Axel") began generating visitor passes for them. *Id.* ¶ 37. Ms. Bales told Axel she wished to speak with or make an appointment with an administrator. *Id.* ¶ 39.

As Axel handled Plaintiffs' sign-in process, another HISD employee, Evelyn Polio ("Polio"), asked Mr. Bales if he needed assistance. *Id.* ¶ 40. According to Plaintiffs, Polio's comment represented a racial slight, as it suggested that Plaintiffs—a mixed-race couple—were not together. *Id.* ¶ 41. Ms. Bales stated to Mr. Bales that Polio's comment was "racist," which Mr. Bales agreed to. *Id.* ¶ 43. Axel stated that Polio was not racist. *Id.* ¶ 44. According to the Complaint, Plaintiffs then "point[ed] out that racist conduct is not confined to a specific ethnicity—Mexicans can be racist as can [any] ethnicity." *Id.* ¶ 46. Polio responded that she was not Mexican. *Id.* Throughout this exchange, Plaintiffs allege they did not "use profanity or speak in a manner that differed in volume or tone from their everyday conversational speech." *Id.* ¶ 57. However,

according to documents attached to the Complaint, Axel reported to Graves that she recalled Ms. Bales entering the Welcome Center and stating: "I need to speak with the principal or whoever is in charge of this racist bitch" and "I need the damn principal or whoever is in charge." Doc. #3, Ex. 1 at 2. In response to Polio asking Mr. Bales if he needed assistance, Axel reported to Graves that Ms. Bales said, "I can't stand racist Mexicans." *Id.* Polio reported to Graves that, after she asked Mr. Bales if he needed assistance, Ms. Bales stated: "you are racist, don't you see we are together," "I hate that racist s***t," and "I can't stand that Mexican Racist." *Id.* at 3.

Once Plaintiffs signed in and received their visitor passes, they continued to wait in the Welcome Center to meet with an administrator. Doc. #1 ¶ 49. During this time, Plaintiffs allege they were monitored by numerous HISD employees, including Davis and other armed officers. *Id.* ¶¶ 49–51. One HISD police officer stated that she might arrest the Plaintiffs. *Id.* ¶ 51. Eventually, HISD Administrator Mary Ellen Fernandez ("Fernandez") came into the Welcome Center to meet Plaintiffs, at which time she scheduled a meeting to discuss Plaintiffs' concerns the following day. *Id.* ¶ 59–61.

The next day, March 2, Plaintiffs returned to Lamar for their meeting, which was attended by Fernandez and HISD employee Dennis Gillipsie. *Id.* ¶ 65. According to Plaintiffs, they did not get to air many of their grievances regarding the treatment of Maegan the day before but instead were chastised regarding their own purported behavior. *Id.* ¶¶ 65, 68. At the end of the meeting, Fernandez threatened to bar Plaintiffs from the Lamar campus, which prompted Mr. Bales to explain that they parked in Lamar's visitor lot every Friday to use a bank located on the campus. *Id.* ¶ 77–78. The following day, Plaintiffs went to the bank located on Lamar's campus, as they did each Friday. *Id.* ¶ 81. Davis, who was patrolling the parking lot in a golf cart, observed and "glared" at the Plaintiffs as they walked from the bank to their car. *Id.* ¶¶ 81–88.

On March 6, 2023, HISD issued a Criminal Trespass Warning Notice (the "Notice"), signed by Graves, to Ms. Bales only. *Id.* ¶¶ 89–90; Doc. #3, Ex. 2. The Notice, which was effective from March 6, 2023 to May 31, 2023, provided that (1) Ms. Bales' visits to Lamar to conduct school-related business had to be approved 24 hours in advance by Graves; (2) if an emergency concerning her child arose and Ms. Bales was called to address the situation, she was permitted to come into the front office area and follow visitor protocols; and (3) Ms. Bales was allowed to attend school sponsored and extra-curricular activities in which her child is involved, as well as any school-related meetings on campus open to all parents or the general public. *Id.* In support of this course of action, the Notice cited Ms. Bales' alleged use of "profanity," her "hostile behavior toward staff," and her "banging on the counter and yelling" while at the Welcome Center on March 1, 2023. Doc. #3, Ex. 2 at 1. Additionally, the Notice cited Ms. Bales' visit to Lamar's campus on March 3, 2023, when she parked in the visitor lot and walked "across the lawn during lunch without registering as a campus visitor." *Id.* Finally, the Notice stated that on several other occasions, "office staff reported aggressive behavior and a disruption to the school environment." *Id.* The Notice did not describe any procedure for appealing the decision.

On March 23, 2023, Plaintiffs delivered a Level 1 Grievance (the "First Grievance") to Graves to appeal the Notice. *Id.* ¶ 102. Less than three days later, Ethan was disciplined for violating HISD's dress code and made to change into other pants issued by the school, even though, according to Plaintiffs, the dress code is "routinely" violated by students without consequence. *Id.* ¶¶ 192–94, 196. Although Ethan returned the pants at the end of the day, an HISD employee pulled him out of class the following day and accused him of stealing the pants and threatened suspension. *Id.* ¶¶ 197–98, 201.

On April 11, 2023, Graves presided as decision-maker in a "Level 1" hearing regarding the

First Grievance. *Id.* ¶ 108. On April 20, 2023, Graves affirmed the actions complained of in the First Grievance. *Id.* ¶ 109. On April 24, 2023, Plaintiffs appealed Graves' decision regarding the First Grievance and filed a second grievance based on HISD's disciplinary action toward Ethan (the "Second Grievance"). *Id.* ¶¶ 110–11. On May 4, 2023, Graves presided over a Level 1 hearing regarding the Second Grievance and again affirmed HISD's conduct. *Id.* ¶¶ 112–13. Plaintiffs appealed Graves' decision on the Second Grievance. *Id.* ¶ 114. Though HISD had set "Level 2" hearings to address the First and Second Grievances (collectively, the "Grievances") in May, those hearings were delayed and eventually indefinitely postponed, with HISD asserting that it first needed to investigate the conduct in the Second Grievance before addressing the matter further. *Id.* ¶ 115–21. Ultimately, HISD held a consolidated Level 2 hearing on October 13, 2023, to address the Grievances. *Id.* ¶ 122. On November 8, 2023, HISD again affirmed its conduct. *Id.* ¶ 123. On November 17, 2023, Plaintiffs appealed the Level 2 decision. *Id.* ¶ 124. The HISD Board held a hearing regarding the matter on May 9, 2024. *Id.* ¶ 127. On May 14, 2024, the HISD Board issued a letter affirming the decision of the Level 2 officer. *Id.* ¶ 128. The Board's hearing and decision occurred 13 months after Plaintiffs delivered their First Grievance, even though HISD policy provides that such disputes will be heard by the Board within 90 days. *Id.* ¶ 127.

**b. Procedural History**

On December 17, 2024, Plaintiffs filed their Complaint against HISD and Graves, asserting several violations of the United States Constitution pursuant to 42 U.S.C. § 1983 ("Section 1983"). Doc. #1. Specifically, Plaintiffs allege Defendants violated the First Amendment Free Speech Clause through viewpoint discrimination; violated the Fourteenth Amendment Due Process Clause and Equal Protection Clause; and retaliated against them in violation of the First and Fourteenth Amendments. *Id.* On January 17, 2025, Defendants moved to dismiss all of Plaintiffs' claims

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. #13. Graves also asserts qualified immunity. *Id.*

## II. Legal Standards

### a. Federal Rule of Civil Procedure 12(b)(1)

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction tests the court's statutory or constitutional power to adjudicate the case." *Wesolek v. Layton*, 871 F. Supp. 2d 620, 627 (S.D. Tex. 2012) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). District courts may dismiss a case for lack of subject matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). "The burden of proof for a [Rule] 12(b)(1) motion to dismiss is on the party asserting jurisdiction, and, at the pleading stage, the plaintiff's burden is to allege a plausible set of facts establishing jurisdiction." *Haverkamp v. Linthicum*, 6 F.4th 662, 668 (5th Cir. 2021) (cleaned up). Moreover, "all well-pleaded facts are taken as true and all reasonable inferences must be made in the plaintiff's favor." *Id.* at 668–69.

### b. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint need not contain 'detailed factual allegations'; rather, it need only allege facts sufficient to 'state a claim for relief that is plausible on its face.'" *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). From the face of the complaint, there must be enough factual matter to raise a reasonable

expectation that discovery will reveal evidence as to each element of the asserted claim. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Significantly, a complaint may proceed even if 'recovery is very remote and unlikely,' so long as the alleged facts 'raise a right to relief above the speculative level.'" *Littell*, 864 F.3d at 622 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In evaluating the complaint, the Court takes "the well-pleaded factual allegations in the complaint as true" but does "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). Additionally, courts may "consider documents attached to the Rule 12(b)(6) motion 'that are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020) (quoting *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010)). In addition, all reasonable inferences must be drawn in the plaintiff's favor. *Severance v. Patterson*, 566 F. 3d. 490, 501 (5th Cir. 2009).

**c. Qualified Immunity**

Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an "immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). Once a defendant has invoked the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

In *Saucier v. Katz*, the Supreme Court established a two-part framework to determine if a plaintiff has overcome a qualified immunity defense. 533 U.S. 194 (2001). First, the court asks whether, taken in the light most favorable to the injured party, "the facts alleged show the [government official's] conduct violated a constitutional right." *Id.* at 201. Second, the court considers whether the allegedly violated right was "clearly established." *Id.* at 201. When deciding whether the constitutional right was clearly established, the court asks whether the law so clearly and unambiguously prohibited the conduct such that a reasonable official would understand that what she was doing violated the law. *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). "Answering in the affirmative requires the court to be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity. This requirement establishes a high bar." *Id.* Though courts do not "require a case directly on point," there must be existing precedent that "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "What is crucial is that the Defendants had 'fair warning.'" *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 471 (5th Cir. 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Furthermore, even if "the defendant's actions violated a clearly established constitutional right," the court will then ask whether qualified immunity is nevertheless "appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

## III. Analysis

First, Defendants move to dismiss all claims asserted by Mr. Bales under Rule 12(b)(1) for lack of standing. Doc. #13 at 5-6. Defendants also move to dismiss all of Plaintiffs' claims under

Rule 12(b)(6). *Id.* Specifically, Defendants argue that Plaintiffs have not sufficiently alleged facts to support their First Amendment viewpoint discrimination claim, their Fourteenth Amendment Due Process Clause claim, their Equal Protection Clause claim, or their First Amendment and Fourteenth Amendment retaliation claims. *Id.* at 8–11. With respect to Plaintiffs' constitutional claims against Graves, Defendants also argue that such claims are barred by qualified immunity. *Id.* at 11–13. Moreover, with respect to all of Plaintiffs' claims against HISD, Defendants argue Plaintiffs have not sufficiently alleged a deprivation of rights pursuant to an official HISD policy or firmly entrenched custom, as required for municipal liability claims under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). *Id.* at 7–8. The Court will address each of Defendants' arguments in turn.

**a. Mr. Bales' Standing**

Defendants argue that Mr. Bales lacks standing and that his claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(2). Doc. #13 at 5–6. Under Article III of the Constitution, a plaintiff must establish standing to bring a lawsuit in federal court. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To demonstrate Article III standing, a plaintiff must show: "(1) that he has an injury in fact; (2) that there is a causal connection between his injury and the conduct complained of; and (3) that his injury will be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An injury in fact results from the invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* "Particularized" injuries "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). "Concrete" injuries are "physical, monetary, or cognizable intangible harms traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413,

427 (2021).

As alleged in the Complaint, Plaintiffs' viewpoint discrimination, equal protection, and due process claims are based on the Notice issued by Graves to Ms. Bales—a decision that was affirmed by HISD throughout a lengthy grievance process. Although Mr. Bales claims the Notice "chill[ed] his right to speak" and discouraged him from making visits to campus, he does not allege he was ever deprived of access to the school or subject to any punitive action by Defendants. Doc. #1 ¶¶ 234, 236. Because "standing cannot be conferred by a self-inflicted injury," and any purported self-censorship by Mr. Bales appears to arise from fear of discipline that is wholly speculative, the Court finds that Mr. Bales has no standing as it relates to his viewpoint discrimination, equal protection, and due process claims. *See Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018); *see also Clapper*, 568 U.S. at 416 (noting plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

Plaintiffs' retaliation claims under the First and Fourteenth Amendments rest on the disciplinary actions taken against Ethan after the filing of the First Greivance, which concerned the Notice issued to Ms. Bales. *See* Doc. #1 ¶¶ 262–67. Though Mr. Bales asserts that he suffered "emotionally" due to this purported retaliation, this is far too conclusory to give rise to a particularized injury in fact that supports Article III standing. *See* Doc. #15 at 7. As such, the Court finds that Mr. Bales has not established standing to assert any claims in this case, and his claims should therefore be dismissed without prejudice under Rule 12(b)(1).[1]

---

[1] "[A]ny dismissal predicated on Fed. R. Civ. P. 12(b)(1) must be without prejudice." *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020), as revised (Dec. 30, 2020).

**b. Ms. Bales' Claims Against Graves**

**1. First Amendment Viewpoint Discrimination**

Next, Defendants move to dismiss Ms. Bales' viewpoint discrimination claim[2] against Graves, arguing that she is entitled to qualified immunity. Doc. #13 at 8, 11–14. Construing the Complaint and Plaintiffs' Response liberally, it appears that Ms. Bales asserts that Graves engaged in unconstitutional viewpoint discrimination by issuing the Notice, which was purportedly aimed to suppress complaints regarding HISD's treatment of Maegan and the viewpoint that "racist conduct is not limited to white persons but can infect persons of all races and ethnicities." Doc. #1 ¶¶ 220–28; Doc. #15 at 9.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). "Discrimination against speech because of its message is presumed to be unconstitutional." *Id.* (citing *Turner Broad. System, Inc. v. FCC*, 512 U.S. 622, 641–43 (1994)). Viewpoint discrimination is an "egregious form of content discrimination" by which the "government targets not subject matter, but particular views taken by speakers on a subject." *Id.* at 829. "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* (citing *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983)). Moreover, "viewpoint discrimination violates the First Amendment regardless of the forum's classification." *Hobbs v. Hawkins*, 968 F.2d 471, 481 (5th Cir. 1992).

---

[2] The Court notes that the Complaint asserts a claim for "viewpoint/content discrimination," but neither Plaintiffs nor Defendants differentiate between viewpoint discrimination and content discrimination. Given that viewpoint discrimination is a form of content discrimination, the Court evaluates Ms. Bales' claim under this standard.

"Where there are no allegations of malice, there exists a 'presumption in favor of qualified immunity' for officials in general, and for educators in particular." *Morgan v. Swanson*, 755 F.3d 757, 760 (5th Cir. 2014) (quoting *Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir. 1990)). Notably, "[c]ourts recognize that school officials have 'a difficult job, and a vitally important one.' For this reason, educators are entitled to immunity unless 'no reasonable official' would have deemed the disputed conduct constitutional." *Id.* (quoting *Morse v. Frederick*, 551 U.S. 393, 409, 417 (2007)). The Fifth Circuit has noted "that educators are rarely denied immunity from liability arising out of First–Amendment disputes." *Id.* "The rare exceptions involve scenarios in which a factually analogous precedent clearly established the disputed conduct as unconstitutional." *Id.*

Here, the Court finds it need only evaluate the second prong of the qualified immunity analysis: whether the allegedly violated constitutional right is clearly established. Plaintiffs fail to substantively engage in this analysis in their Response, even though it is their burden to "show that the allegedly violated right was clearly established by 'identify[ing] a case—usually, a body of relevant case law—in which an officer acting under similar circumstances . . . was held to have violated the Constitution.'" *Carvell on behalf of H. A. A. W. v. Gibson*, No. 23-30252, 2024 WL 4533312, at *4 (5th Cir. Oct. 21, 2024) (unpublished) (quoting *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020)). Indeed, the only cases that Plaintiffs point to are *Hughes v. Garcia*, 100 F.4th 611, 623-24 (5th Cir. 2024) and *Franks v. Delaware*, 438 U.S. 154 (1978) for the proposition that it is long established that "[f]alse or misleading reporting defeats a claim for qualified immunity." *See* Doc. #15.

As an initial matter, *Hughes* was published in May 2024, well after the events in 2023 occurred that give rise to Ms. Bales' First Amendment claim. Thus, *Hughes* could not have shown that the purportedly violated right was clearly established "*at the time* of the disputed action." *See*

*Brown*, 623 F.3d at 253 (emphasis added). Moreover, *Hughes* concerned an arrestee alleging that police officers violated his Fourth and Fourteenth Amendment rights by filing a false report. 100 F.4th at 618. Likewise, *Franks* concerned an arrestee's rights under the Fourth and Fourteenth Amendments to challenge the truthfulness of factual statements in an affidavit supporting an arrest warrant. 438 U.S. at 155–56. Neither of these cases, which concern "radically different factual context[s]," help "provide any meaningful guidance" in the case at bar, which involves a principal purportedly restricting the speech of a concerned parent. *See Morgan*, 755 F.3d at 761 (finding that the right of a parent to distribute religious materials to other adults at his child's school party was not clearly established and therefore the principal who banned distribution of the materials was entitled to qualified immunity)

Other than identifying the foregoing inapposite cases, Plaintiffs appear to only rely on general statements of First Amendment law to show a clearly established First Amendment violation. *See* Doc. #15. But the Fifth Circuit has specifically stated, in the context of viewpoint discrimination claims in the school setting, that "broad generalization[s] . . . will not suffice for the purposes of qualified immunity analysis" because they fail to "provide the official with any sense of what is permissible under a certain set of facts." *Morgan*, 755 F.3d at 761 (noting that "sweeping statements about the First Amendment are not sufficient to deprive a teacher of qualified immunity" (internal quotations and citation omitted)). Thus, the Court finds that Ms. Bales has failed to meet her burden to demonstrate a clearly established constitutional violation as it relates to her viewpoint discrimination claim against Graves under the First Amendment. As a result, this claim is dismissed because Graves is entitled to qualified immunity.

**2. Fourteenth Amendment Equal Protection**

Defendants also move to dismiss Ms. Bales' claim against Graves under the Fourteenth

Amendment Equal Protection Clause. Doc. #13 at 9. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (cleaned up). "[T]o state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that (1) he or she received treatment different from that received by similarly situated individuals and that (2) the unequal treatment stemmed from a discriminatory intent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (cleaned up). To establish discriminatory intent, a plaintiff must demonstrate "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).

Here, Ms. Bales alleges that she and Mr. Bales engaged in substantially the same conduct when they went to the Lamar Welcome Center on March 1, 2023. Doc. #1 ¶ 89. Ms. Bales further alleges she was subjected to race-based discrimination in violation of the Equal Protection Clause because Graves issued a Notice to her, a black woman, but not to Mr. Bales, a white man. *Id.* However, according to the Complaint and attached exhibits, Graves issued the Notice to Bales based on reports from other staff at HISD that Ms. Bales shouted and used profanity in the Welcome Center. *See* Doc. #3, Ex. 1 at 2. Those reports by HISD staff, attached to the Complaint, did not mention similar conduct by Mr. Bales. Though Ms. Bales alleges that reports of her inappropriate behavior are false, she has not alleged any non-conclusory or non-speculative facts from which the Court can reasonably infer that Graves knew or had reason to believe the reports were false. Thus, though Ms. Bales has alleged she received treatment different from that received

by similarly situated individuals, she has not sufficiently alleged that the Notice was issued by Graves with discriminatory intent. As such, Ms. Bales' equal protection claim against Graves are dismissed.

**3. Fourteenth Amendment Due Process**

Next, Defendants move to dismiss Ms. Bales' Fourteenth Amendment due process claim against Graves. Doc. #13 at 11. It is unclear from the Complaint whether Ms. Bales asserts a substantive due process or procedural due process claim. But given that Defendants move to dismiss the Complaint in its entirety, the Court will consider both.

**i. Substantive Due Process**

Ms. Bales alleges that Graves violated her substantive due process rights by issuing the Notice, which restricted her access to Lamar. Doc. #1 ¶ 252. "To establish a violation of the Fourteenth Amendment's guarantee of substantive due process, a plaintiff must first prove that she was deprived of a life, liberty, or property interest in an arbitrary and capricious manner." *Roberts v. Sinton Ind. Sch. Dist.*, No. 2:18-CV-101, 2019 WL 93308, at *3 (S.D. Tex. Jan. 3, 2019) (citing *Saucedo-Falls v. Kunkle*, 299 Fed. App'x 315, 319 (5th Cir. 2008)). The Supreme Court has recognized that parents have a constitutionally protected liberty interest "in the care, custody, and control of their children" and a "fundamental right . . . to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000). But though parents have a "right to direct their children's education," they do not have the "unfettered right" to access a public-school campus. *Meadows v. Lake Travis Indep. Sch. Dist.*, 397 Fed.Appx. 1, 3 (5th Cir. 2010); *see also Roberts*, 2019 WL 93308, at *3 ("Case law has clearly established that schools can lawfully restrict parents' access to their child's school as long as the parents retain an avenue to communicate with the school."). For instance, in *Buckley v. Garland Independent*

*School District*, a school principal issued a criminal trespass warning to the parent of a student, citing his alleged "confrontational, aggressive, and disruptive behavior toward school staff." 2005 WL 2041964, at *1 (N.D. Tex. 2005). The court granted summary judgment on the parent's substantive due process claim premised on the trespass warning, noting that nothing suggested the principal had "any reason to believe the complaints he relied on were not legitimate complaints or that [the principal] acted unreasonably in relying on the reporting of his staff." *Id.* at *2. Nor was there any evidence that the trespass warning "restricted [the parent's] ability to oversee his child's education and have access to the [s]chool" given that "[h]e retained the ability to conduct official school business at the main office and the ability to talk to his daughter's teachers with an appointment." *Id.* at *3.

As in *Buckley*, the Notice issued against Ms. Bales does not deprive her of her right to oversee her child's education, as it permitted her to go to Lamar to address school business with an appointment, did not preclude her from attending her child's extracurricular activities, and did not preclude her from attending school meetings open to parents. Doc. #3, Ex. 2. Nor does the Notice prevent Ms. Bales from making communications with the school over email or phone. *Id.* In addition, though Ms. Bales asserts that Axel and Polio lied about her behavior at the Welcome Center on March 1, 2023, the Complaint includes no non-speculative allegations to suggest Graves had "any reason to believe the complaints [s]he relied on were not legitimate complaints or that [she] acted unreasonably in relying on the reporting of [her] staff." *See Buckley*, 2005 WL 2041964, at *3. Because "schools can lawfully restrict parents' access to their child's school as long as the parents retain an avenue to communicate with the school," and the Notice allowed Plaintiff to communicate with Lamar, the Court finds that Plaintiff has not sufficiently alleged a substantive due process claim against Graves. *See Roberts*, 2019 WL 93308, at *3.

**ii. Procedural Due Process**

The basis of any purported procedural due process claim asserted by Ms. Bales is even less clear. But construing the Complaint liberally, it appears Ms. Bales argues that her procedural due process rights were violated because (1) the Notice caused her reputational harm and (2) she was not afforded sufficient process to challenge the Notice. Doc. #15 at 15–16. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023).

The Court presumes that the protected liberty interest at issue is Ms. Bales' right to direct the education and upbringing of her children, though the Complaint does not allege any protected interest with any specificity. But, importantly, "no court has ever interpreted the due process clause to create a parental right of unfettered access to school facilities." *Buckley*, 2005 WL 2041964, at *2. Indeed, "courts have consistently upheld the authority of school officials to control activities on school property. This includes barring third parties, including parents, from access to the premises when necessary to maintain order and prevent disruptions to the educational environment." *Id.* Here, Ms. Bales alleges that Graves issued the Notice based on reports from HISD staff that Ms. Bales was disruptive in the Welcome Center. As noted above, nothing in the Complaint suggests Graves would have any reason to believe that the complaints of her staff were not legitimate. Moreover, the notice allowed Ms. Bales to go to Lamar to conduct school business, attend her son's extracurricular activities, and attend public meetings. Thus, the Court finds Ms. Bales has failed to sufficiently allege the first element of her procedural due process claim to the extent it is premised on access to public schools. Likewise, to the extent Ms. Bales asserts she experienced reputational harm or shame due to the Notice and subsequent grievance proceedings, her complaints do not constitute a protected liberty interest sufficient to support a procedural due

process claim. *See Doe v. Bonath*, 705 F. Supp. 3d 690, 712 (W.D. Tex. 2023) (dismissing the plaintiff's procedural due process claim premised on issuance of a criminal trespass warning because damage to her reputation did not constitute a liberty interest). Because Ms. Bales has failed to plausibly allege the elements of a procedural due process violation, her procedural due process claim against Graves must be dismissed.

**4. First and Fourteenth Amendment Retaliation**

Finally, Defendants move to dismiss Plaintiff's First Amendment and Fourteenth Amendment retaliation claims against Graves. Doc. #13 at 8. As an initial matter, courts in this Circuit analyze speech-based retaliation claims brought under both the First and Fourteenth Amendments under the First Amendment standard. *See, e.g.*, *Goree v. City of Verona*, No. 1:17-CV-93-SA-DAS, 2021 WL 4449985, at *18 n.17 (N.D. Miss. Sept. 28, 2021), *aff'd*, No. 21-60911, 2022 WL 3647279 (5th Cir. Aug. 24, 2022) ("Although [the plaintiff] styled this claim as a First and Fourteenth Amendment claim, First Amendment retaliation standards are applicable."). To state a retaliation claim under the First Amendment, plaintiffs "must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). With respect to the second element, "ominous glares, criticisms, unfair accusations, and unwarranted investigations that do not lead to a tangible harm . . . likely do not chill protected speech." *Doe v. City View Indep. Sch. Dist.*, 736 F. Supp. 3d 459, 467 (N.D. Tex. 2024), *aff'd*, No. 24-10592, 2025 WL 2045669 (5th Cir. July 22, 2025). The second element of a retaliation claim also "requires some showing that the plaintiffs' exercise of free speech has been curtailed." *Keenan*, 290 F.3d at

259.

Ms. Bales' retaliation claims are grounded in alleged acts of retaliation against her son. Specifically, Ms. Bales asserts that, because she was complaining about HISD conduct, Ethan was disciplined at school for a dress code violation, made to change into different pants, and then falsely accused of stealing those pants. Doc. #1 ¶¶ 191–201. Ms. Bales also asserts that Graves reprimanded Ethan for going off campus for lunch without signing out and told him he had an "attitude." *Id.* ¶¶ 204–05. Aside from the fact that many of the alleged retaliatory actions did not involve Graves at all, the Court finds that Ms. Bales' son being disciplined at school for violations of school policy would not chill a parent of ordinary firmness from complaining about HISD conduct. And other than the disciplinary actions against Ethan, Ms. Bales' retaliation claim is premised on what amounts to "criticisms" and "unfair accusations" against Ethan, which is also insufficient. *See Doe*, 736 F. Supp. 3d at 467. Moreover, the Complaint does not detail with any specificity how Ms. Bales' speech was curtailed as a result of the actions taken against Ethan. As such, the Court finds Ms. Bales has not sufficiently pleaded that she suffered "an injury that would chill a person of ordinary firmness" from continuing to complain about school conduct. *See Keenan*, 290 F.3d at 258. As a result, Ms. Bales' retaliation claim are dismissed.

**c. Ms. Bales' Claims Against HISD**

Defendants next argue that Ms. Bales' claims against HISD should be dismissed because she has failed to allege facts supporting the elements of municipal liability. A municipality is a "person" subject to suit under Section 1983. *See Monell*, 436 U.S. at 690. But "[i]t is well established that a city is not liable under § 1983 on the theory of respondeat superior." *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010). Rather, "[a] municipality is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Id.* (quoting *Piotrowski*

*v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). For municipal liability claims under Section 1983, a plaintiff must identify "(1) an official policy [or custom], of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002). In Texas, the authorized policymaker for a school district is its Board of Trustees (the "Board"). *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing Tex. Educ. Code. § 11.151(b)).

"To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). The Fifth Circuit has recognized "three ways of establishing a municipal policy for the purposes of *Monell* liability." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019). First, a plaintiff may demonstrate "written policy statements, ordinances, or regulations." *Id.* at 215 (internal quotations and citation omitted). "Second, a plaintiff can show 'a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018)). "Third, even a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the [Section] 1983 claim.'" *Id.* (quoting *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017)).

Here, the Court has determined that Ms. Bales failed to adequately allege equal protection and due process claims under the Fourteenth Amendment and retaliation claims under the First

and Fourteenth Amendments. As a result, these claims must also be dismissed against HISD because failure to allege a constitutional violation is fatal to a municipal liability claim. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012) (noting the Fifth Circuit has "stated time and again that '[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing'" (quoting *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997))).

That leaves only Ms. Bales' First Amendment viewpoint discrimination claim against HISD, which the Court dismissed as to Graves because any purported constitutional violation was not clearly established. In this regard, Plaintiff asserts that HISD is subject to municipal liability because the Board ratified Graves' alleged wrongful conduct by approving the decision to issue the Notice. Doc. #15 at 16. The Supreme Court has recognized that authorized policymakers can be made liable for a subordinate's actions when they ratify their conduct. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). However, the Fifth Circuit limits the theory of ratification to "extreme factual situations." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009); *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009). "Therefore, unless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." *World Wide*, 591 F.3d at 755. Moreover, to sufficiently plead a ratification theory, "a clear prerequisite is knowing approval by a policymaker of both conduct and its underlying, improper basis." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 537 (S.D. Tex. 2020).

The Court has already determined that issuing the Notice did not amount to "an obvious violation of clearly established law." *See World Wide*, 591 F.3d at 755. In addition, the Complaint does not plead any non-conclusory facts that suggest the Board, in approving Graves' decision to issue the Notice during the grievance process, knowingly approved any possible improper basis for issuing the Notice. *See Taylor*, 488 F. Supp. 3d at 537. Nor does this case present the type of "extreme factual situation" required by the Fifth Circuit to support a theory of ratification. *World Wide*, 591 F.3d at 755. Thus, the Court finds that Ms. Bales has not sufficiently alleged a ratification theory. As such, her remaining municipal liability claims against HISD are dismissed.

**d. Leave to Amend**

The Court notes that Plaintiffs' Response to the Motion to Dismiss includes a conclusory request for leave to amend which reads, in full, "Plaintiff requests the right to replead should any of the Motions to Dismiss be granted." Doc. #15 at 17. However, a "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* Fed. R. Civ. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (internal quotations and citation omitted); *see also Douglas v. DePhillips*, 740 F. App'x 403, 406 (5th Cir. 2018) (unpublished) (denying leave to amend because the plaintiffs "failed to set forth with sufficient particularity the grounds for the amendment"). Thus, Plaintiffs' request for leave is denied because they do not state with particularity their grounds for amendment.

## IV. Conclusion

In conclusion, the Court finds that the Motion to Dismiss (Doc. #13) is hereby GRANTED, as stated herein. Because Mr. Bales lacks standing, his claims against Defendants are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). In

addition, because Ms. Bales has failed to plausibly allege any of her claim against the Defendants, her claims are DISMISSED WITH PREJUDICE under Rule 12(b)(6). Plaintiffs' request for leave to amend is DENIED. The Court will enter a separate Final Judgment.

It is so ORDERED.

SEP 30 2025
Date

The Honorable Alfred H. Bennett
United States District Judge